UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 11-CR-401 |
| EUGENE KLEIN, ) | |
| ) | Judge John W. Darrah |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Eugene Klein's Motion for Production of Documents for *In Camera* Review [58]. Specifically, Klein seeks to review the Special Administrative Measures ("SAMs") placed upon Frank Calabrese, Sr., as well as a November 2, 2010 letter written by the United States Attorney for the Northern District of Illinois, requesting the renewal of the SAMs on Calabrese (the "Renewal Letter").[1]

## BACKGROUND

Klein's indictment relates to the conviction and imprisonment of Frank Calabrese Sr., a high-ranking member of the Chicago Mob. (Gov't Resp. at 4.) Calabrese is serving a life sentence for his role in the commission of thirteen murders, as well as other crimes. (Gov't Resp. at 6.) At Calabrese's trial, it was found that he continued to communicate with other members of the Mob regarding criminal activity

---

[1] The Government's Unopposed Motion for Entry of a Second Protective Order Governing Discovery [64], which restricts disclosure of SAMs by the Defendant by separate order, is granted. *See* Docket Entry No. 64, Second Protective Order Governing Discovery. Therefore, the only issue remaining on Defendant's Motion is the *in camera* review of the Renewal Letter.

while in prison. (*Id.*) Upon Calabrese's imprisonment, the Government instituted Special Administrative Measures ("SAMs") in order to limit Calabrese's communications while in prison.

Federal regulations permit the Bureau of Prisons, at the direction of the Attorney General, to "implement special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3. The stated purpose for the SAMs imposed upon Calabrese "was to prevent 'the inmate from committing, soliciting, or conspiring to commit additional criminal activity,' and to foreclose 'communications or contacts with persons that could result in death or serious bodily injury.'" (Indictment, Count One, ¶ 1(i).) Under the SAMs, Calabrese is prohibited from communicating with anyone other than his attorney and immediate family members; even these communications are limited and monitored. (Gov't Resp. at 8.)

Klein was employed by the Bureau of Prisons as a chaplain; in this role, Klein regularly interacted with Calabrese to provide religious ministry. Klein is accused of conspiring with Calabrese to defeat the SAMs in his role as prison chaplain. Specifically, the indictment accuses Klein of acting with Calabrese to circumvent the SAMs in an effort to shield Calabrese's assets from government seizure.

Klein has previously moved to dismiss Count One of his indictment for failure to charge an offense or, alternatively, for vagueness. Count One of the indictment charges Klein with conspiring to commit an offense against the United States or to otherwise

2

defraud the United States or one of its agencies pursuant to 18 U.S.C. § 371.

Specifically, the indictment alleges Klein:

> did knowingly conspire with Frank Calabrese, Sr. and others . . . to defraud the United States and an agency thereof, to wit, to hamper, hinder, impede, and obstruct by deceit and dishonest means, the lawful and legitimate functions of the United States Department of Justice and its agency, the Bureau of Prisons, in the administration and enforcement of the Special Administrative Measures for inmate Frank Calabrese, Sr.

(Indictment, Count One, ¶ 2.)

Klein argues this charge must be dismissed because it does not properly allege that he sought to interfere with a lawful governmental function. Specifically, Klein argues that the SAMs in place for Calabrese went beyond the lawful purpose of the SAMs described in 28 C.F.R. § 501.3 and that the scope of the Calabrese SAMs exceeds what is permitted under the federal regulation.

In support of Klein's motion for dismissal, he seeks to review the Renewal Letter sent from the U.S. Attorney for this District, then, Patrick Fitzgerald, requesting a renewal of the SAMs imposed upon Calabrese. In the written request to extend Calabrese's SAMs, Fitzgerald apparently references the November 2, 2010 Renewal Letter and states, "Calabrese attempted to circumvent the SAM by sending an unmonitored coded message in an apparent attempt to shield his assets from seizure by the government." (Def.'s Mot. at 3.) The Government refuses to produce this letter to Klein, arguing that the contents of the letter are both irrelevant and privileged. (Gov't Resp. at 2.)

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 16(a)(1) (E) provides that:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense.

A district court's ruling on a motion under Fed. R. Crim. P. 16 is reviewed under an abuse of discretion standard. *United States v. Baker*, 453 F.3d 419, 424 (7th Cir. 2006) (citation omitted). Moreover, "the United States Supreme Court in *Brady* held that upon request of the defendant the government is obligated under the due process clause of the Constitution of the United States to produce evidence in its possession that is both favorable to the accused *and* material to the issue of guilt or punishment." *United States v. Bastanipour*, 41 F.3d 1178, 1182 (7th Cir. 1994) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

**ANALYSIS**

*Relevancy*

The Government first argues that the contents of the Renewal Letter are irrelevant because regardless of the contents, the Government posits, Klein is unable to challenge the validity or constitutionality of the SAMs to excuse Klein from compliance with the SAMs. Here, the Government simply restates the arguments it presents in its opposition to Klein's Motion to Dismiss Count I of his indictment. No ruling has been made on that motion to date, nor does this opinion issue a ruling on that pending motion. The Government claims that Klein "wishes to argue at trial that the SAMs were not imposed

4

for a proper purpose, and therefore he is not liable for violating them," a position, the Government argues, Klein cannot succeed upon. (Gov't Resp. at 12.)

However, Klein counters that the Renewal Letter would not be used solely for purposes of trial, but might also impact the resolution of Klein's pending motion to dismiss Count I of his indictment. (Def.'s Reply at 3.) Klein's argument regarding the relevancy of the Renewal Letter is persuasive: the contents of the Renewal Letter could be relevant as to whether or not Count I of Klein's indictment should be dismissed. The contents of the Renewal Letter could disclose a purpose for the renewal of the SAMs beyond that which is permitted under the law. If so, the Renewal Letter could be relevant to the decision regarding of Klein's Motion to Dismiss Count I of the indictment. The Government shall produce the Renewal Letter for *in camera* review by the Court.

## *Privilege*

The Government also argues that the Renewal Letter should not be produced because it is subject to privileges, specifically: executive privilege, deliberative-process privilege, and confidential-informant privilege. Because the Government does not directly invoke the executive privilege, nor explain how it is applicable outside the context of the deliberative-process privilege, only the latter two privileges will be considered.

### Deliberative-Process Privilege

Deliberative-process privilege "protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (*Farley*). It is apparent that the Renewal Letter was made as

5

part of the Department of Justice's decision-making process regarding the institution of SAMs against Calabrese. However, as the Government concedes, this privilege may be overcome "where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." *Id.* (and further noting: "the privilege should be applied as narrowly as consistent with efficient government operation." (internal quotations omitted)). The mere fact that the Renewal Letter is relevant is insufficient to overcome the deliberative-process privilege. Rather, the Government must only produce the Renewal Letter if Klein's need for it outweighs the Government's interest in not disclosing it. *Id.* at 1389. Nowhere in the Government's response does it explain how an *in camera* review of the Renewal Letter would harm the Government or otherwise weaken the overall privilege of deliberative process by the disclosure of the Renewal Letter. Klein, however, has demonstrated a particularized need for the Renewal Letter: he has reason to believe that contents of the letter would support his assertion that Count I of his indictment should be dismissed on the basis that the SAMs exercised on Calabrese exceeded the scope permitted under 28 C.F.R. § 501.3(a).

Moreover, this case is easily distinguishable from a case relied upon by the Government, *United States v. Zingsheim*, 384 F.3d 867 (7th Cir. 2004) (*Zingsheim*). In *Zingsheim*, a district court judge attempted to enforce a standing order which would require the Government to disclose documents made under the protection of the deliberative-process privilege in order to move for a downward departure from the Sentencing Guidelines. *Id.*, 384 F.3d at 869. There, the Seventh Circuit reversed the district court, finding the district court's standing order to be overbroad. *Id.* Here,

however, the disclosure sought by Klein is relatively narrow in scope, and the review of the Renewal Letter would be limited, subject only to *in camera* review.

In weighing these factors, the effect of the *in camera* disclosure of the Renewal Letter on the Government is found to be relatively minor compared to the potential benefit of such disclosure to the defense of Klein's criminal case. *See Farley*, 11 F.3d 1389-90 ("It was essential that the magistrate judge balance [Defendant]'s particularized need for the documents against their nature and the effect of disclosure on the government."). Therefore, the potential benefit to Klein from the *in camera* review of the Renewal Letter outweighs any claim of deliberative-process privilege.

## Confidential Informant Privilege

The Government also argues against the disclosure of the Renewal Letter by asserting the confidential-informant privilege. This privilege "protects from disclosure an informant's identity and his communications with the government that may tend to reveal his identity." *United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994) (citations omitted). This privilege is granted to the Government as a right, and a defendant can overcome this privilege only by showing that his substantial need for the information outweighs the Government's and the public's interest in protecting the identity of informants. *Id.*

There are, however, significant limitations on this privilege. First, "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." *Roviaro v. United States*, 353 U.S. 53, 60 (1957). This means that a simple redaction of an informant's name or any identifying

information would suffice to continue protecting an informant's identity while providing the defendant with the information he requires. Second, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. Therefore, even if the informant's identity is redacted, to the extent any informant's communications are necessary to the defense of Klein's case, the contents contained in the Renewal Letter are not be protected by this privilege.

## CONCLUSION

Based on the foregoing analysis, Defendant Klein's Motion for Production of the Removal Letter for *In Camera* Review [58] is granted.

Date: 8-23-12

JOHN W. DARRAH
United States District Court Judge