# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 11-CR-401 |
| EUGENE KLEIN, ) | |
| ) | Judge John W. Darrah |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Eugene Klein's Motion to Dismiss Count One of his indictment for failure to charge an offense or, alternatively, that 18 U.S.C. § 371, under which Klein is charged, is void for vagueness as it is applied to him. Based on the discussion below, Klein's Motion to Dismiss is denied.

## BACKGROUND

Klein's indictment relates to the conviction and imprisonment of Frank Calabrese Sr., a high-ranking member of the Chicago Mob. (Gov't's Resp. at 1.) Calabrese is serving a life sentence for his role in the commission of thirteen murders, as well as other crimes. (*Id.* at 2.) At Calabrese's trial, it was found that he continued to communicate with other members of the Mob regarding criminal activity while in prison. (*Id.* at 3-4.) Upon Calabrese's imprisonment, the Government instituted Special Administrative Measures ("SAMs") to limit Calabrese's communications while in prison.

Federal regulations permit the Bureau of Prisons, at the direction of the Attorney General, to "implement special administrative measures that are reasonably

necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3. The stated purpose for the SAMs imposed upon Calabrese "was to prevent 'the inmate from committing, soliciting, or conspiring to commit additional criminal activity,' and to foreclose 'communications or contacts with persons that could result in death or serious bodily injury.'" (Indictment, Count One, ¶ 1(i).) Under the SAMs, Calabrese is prohibited from communicating with anyone besides his attorney and immediate family members; even these communications are monitored and limited. (Gov't's Resp. at 5-6.) Klein was employed by the Bureau of Prisons as a chaplain; in this role, Klein regularly interacted with Calabrese to provide religious ministry. Klein is accused of conspiring with Calabrese to defeat the SAMs in his role as prison chaplain. Specifically, the indictment accuses Klein of acting with Calabrese to circumvent the SAMs in an effort to shield Calabrese's assets from government seizure.

Klein moves to dismiss Count One of his indictment for failure to charge an offense or, alternatively, for vagueness. Count One of the indictment charges Klein with conspiring to commit an offense against the United States or to otherwise defraud the United States or one of its agencies pursuant to 18 U.S.C. § 371. Specifically, the indictment alleges Klein:

> did knowingly conspire with Frank Calabrese Sr. and others . . . to defraud the United States and an agency thereof, to wit, to hamper, hinder, impede, and obstruct by deceit and dishonest means, the lawful and legitimate functions of the United States Department of Justice and its agency, the Bureau of Prisons, in the administration and enforcement of the Special Administrative Measures for inmate Frank Calabrese Sr.

(Indictment, Count One, ¶ 2.)

Klein argues this charge must be dismissed because it does not properly allege that he sought to interfere with a lawful governmental function.  Essentially, Klein argues, the SAMs in place for Calabrese went beyond the lawful purpose of the SAMs described in 28 C.F.R. § 501.3.  Klein argues the scope of the Calabrese SAMs exceeds the scope of what is permitted under the federal regulation:  that the SAMs do more than simply prevent risk of death or serious bodily injury but also seek to limit the inmate's ability to communicate information regarding criminal activity.  Because the Calabrese SAMs do more than prevent death or injury, Klein reasons, they are not lawful governmental functions; and, therefore, Klein believes he did not interfere with a lawful governmental function.

Following the briefing on Klein's motion to dismiss Count I, the Court ruled to permit an *in camera* review of the letter renewing the SAMs restrictions placed on Calabrese.  That review of the SAMs renewal letters, however, clearly supports the Government's position that Calabrese's SAMs were put in place and renewed in furtherance of the purpose of 28 C.F.R. § 501.3, to prevent death and serious bodily injury.

**LEGAL STANDARD**

An indictment is legally sufficient when it:  "(1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions."  *U.S. v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (citations omitted).  Provided the indictment tracks the elements of the crime sufficiently and

incorporates enough factual information to put a defendant on notice as to the conduct at issue, it is deemed sufficient. *Id.* at 959.

An offense can be dismissed from an indictment when it invokes a statute that is found to be void due to its vagueness. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness such that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *U.S. v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357 (1983) (*Kolender*)). The purpose of the void-for-vagueness doctrine is twofold: first, it requires that a law must put a citizen on notice as to the manner of the illegal conduct. *Kolender*, 461 U.S. at 357-58. Second, it requires that a law provide minimal guidelines for law enforcement, so that a person enforcing the law is not simply left to his own discretion. *Id.* at 358.

## ANALYSIS

### *Failure to Charge an Offense*

Klein first argues Count One of his indictment fails to properly charge him with an offense, specifically: that administration of the Calabrese SAMs was not a lawful government function because this administration went beyond the scope of the purpose of the SAMs as set out in 28 C.F.R. § 501.3(a). Klein was charged with conspiring to commit an offense or to defraud the United States pursuant to 18 U.S.C. § 371. The definition of the crime of conspiracy to defraud the government is expansive. "The Supreme Court has broadly interpreted the scope of this statutory conspiracy 'to defraud . . . in any manner or for any purpose' to include any fraud that 'reaches 'any conspiracy

4

for the purpose of impairing, obstructing or defeating the lawful function of any department of Government.'" *U.S. v. Hooks*, 848 F.2d 785, 792 (7th Cir. 1988) (citing *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 2751, 97 L.Ed.2d 90 (1987)) (citations omitted).

Count One of Klein's indictment properly alleges this crime against him; based on the *U.S. v. White* explanation of a legally sufficient indictment (provided above), Count One is sufficient on its face. First, it alleges Klein conspired with Calabrese and others. Second, the indictment alleges Klein conspired to defraud the United States, specifically the Bureau of Prisons, in its enforcement of Calabrese's SAMs. Finally, Count One alleges Klein acted to further the object of the conspiracy, specifically by receiving messages from Calabrese and communicating these messages to others. By alleging Klein sought to communicate messages from Calabrese to other individuals in spite of Calabrese's SAMs, the Government properly alleges Klein acted for the purpose of obstructing or defeating the function of the SAMs.

The crux of Klein's dismissal argument hinges on whether or not the administration of the Calabrese SAMs was a lawful government function. Klein argues that because the SAMs sought to prevent Calabrese from committing other crimes, in addition to preventing communications that could result in death or serious bodily injury, the SAMs do not serve the governmental function prescribed in 28 C.F.R. § 501.3(a). This is not so. First, the Attorney General has the express right to manage the treatment, conduct, and discipline of inmates such as Calabrese. *See* 18 U.S.C. § 4001(b). This would include the ability of the Attorney General to limit an inmate's communications,

5

such as the limitations placed upon inmate Calabrese.  Despite this, Klein argues the Calabrese SAMs exceed the power vested with the Attorney General in 28 C.F.R. § 501.3(a), by seeking to prevent Calabrese from shielding his assets from government seizure.  In Klein's view, this attempt to shield assets "does not present any danger of 'death or serious bodily injury.'"  (Def.'s Mot. to Dismiss Indictment at 6.)  This argument is, at best, specious:  it is reasonable to conclude that Calabrese, a man convicted of, among other crimes, seven first-degree murders, might incite violence by communications from prison for any number of reasons, including an intention to cause harm to others he perceived as his enemies, or in order to shield assets from the Government.  A review of the renewal letters renewing Calabrese's SAMs makes clear that the SAMs were in place specifically to prevent death or serious bodily injury.  That no violence occurred as a result of the alleged SAMs violation does not diminish the legitimacy of their governmental function.  The mere act of communicating information in violation of the SAMs, therefore, frustrates this legitimate governmental purpose.

  Moreover, Klein is precluded from advancing the argument that Count One of the indictment must be dismissed because the SAMs are overbroad.  Klein cannot attack the legality of the SAMs that created his alleged unlawful conduct.  In *Dennis v. United States*, 384 U.S. 855, 857-58 (1966) (*Dennis*), the petitioners were convicted of conspiring to defraud the government by filing false "non-Communist" affidavits, as required by the Taft-Hartley Act.  The Supreme Court declined to consider the constitutionality of the Taft-Hartley provision at issue.  *Dennis*, 384 U.S. at 865.  "It is no defense to a charge based upon this sort of enterprise that the statutory scheme sought to

be evaded is somehow defective," explained the Court. *Id.* at 866. The Court opined that it need not question "the constitutionality of a statute at the behest of petitioners who have been indicted for conspiracy by means of falsehood and deceit to circumvent the law which they now seek to challenge." *Id.* Similarly, Klein may not, at this juncture, challenge the legality of the SAMs it is alleged he conspired to violate.

        A useful parallel to Klein's case is the case of *United States v. Stewart*. Lynn Stewart was the defense attorney of Sheikh Abdel Rahman, a convicted terrorist serving a life sentence for conspiring to bomb the World Trade Center and other New York landmarks. *United States v. Stewart*, 590 F.3d 93, 101 (2d Cir. 2009) (*Stewart*). Rahman, like Calabrese, was the subject of SAMs during the course of his imprisonment. Stewart surreptitiously passed messages from Rahman to third parties, in violation of Rahman's SAMs. *Id.* at 104. She was charged, with others, of conspiring to defraud the Government in its efforts to enforce Rahman's SAMs. *Id.* at 108. Stewart sought to dismiss the conspiracy to defraud charge by arguing the SAMs were unconstitutional and improperly imposed. *United States v. Sattar*, 272 F.Supp. 2d 348, 355 (S.D.N.Y. 2003). The District Court rejected Stewart's argument, relying in part on *Dennis*, and providing, "[t]he Supreme Court has repeatedly refused to hear attacks on statutes from those accused of deliberately violating the statutes by fraud and deceit." *Id.* at 371. This decision was affirmed by the Second Circuit, explaining, "We have no basis upon which to entertain a doubt as to the authority of the Attorney General of the United States to ensure that reasonable measures are designed and implemented in an attempt to prevent imprisoned criminals who are considered dangerous despite their incarceration from

engaging in or facilitating further acts of criminality from their prison cells." *Stewart*, 590 F.3d at 111-12 (citing 28 C.F.R. § 501.3(a)). Klein attempts to distinguish the *Stewart* case by arguing that constitutionality of a SAM may still be challenged "where the governmental action at issue was taken with no 'colorable authority.'" *Stewart*, 590 F.3d at 111 (quoting *United States v. Barra*, 149 F.2d 489, 490 (2d. Cir. 1945)). This assertion fails, because, as discussed above, the Attorney General *did* have the authority to impose Calabrese's SAMs. Therefore, Klein may not assert a challenge to the legality of Calabrese's SAMs as a defense to his indictment.

*Void-for-Vagueness Doctrine Inapplicable*

Klein alternatively argues that the crime delineated in 18 U.S.C. § 371, conspiracy to defraud the United States, should be deemed void for vagueness as it is applied to his charges. For Klein to prevail in this argument, he must show that Section 371 either:

(1) does not provide actual notice to an ordinary citizen as to the criminal offense or

(2) fails to discourage arbitrary and discriminatory application in its enforcement. *Kolender*, 461 U.S. at 357. Klein maintains the language of Section 371 does not encompass what Count One of his indictment alleges: a conspiracy to interfere with the administration of Calabrese's SAMs. (Def. Mot. at 8.)

The Seventh Circuit has had the occasion to analyze Section 371 for vagueness. *See United States v. Cueto*, 151 F.3d 620 (7th Cir. 1998). The Seventh Circuit provided: "[t]he meaning of 'conspiracy to defraud' is framed in general terms; it is impossible for Congress to anticipate, identify, and define each and every context in which an

8

agreement to act would qualify as a conspiracy to defraud." *Id.* at 635. Because of the wide-reaching nature of the statute, although Section 371 might not explicitly recount Klein's alleged actions as an example of conspiring to defraud, the indictment provides the "essential nature of the alleged fraud"; and, therefore, the statute would not be considered unconstitutionally vague as it is applied here. *Id.* at 636 (finding that a defendant's indictment, which included a Section 371 violation, was not vague because the allegations included specific conduct charged as part of the "essential nature of the alleged fraud"). Klein's indictment is detailed in explaining the essential nature of the fraud alleged, as well as Klein's specific conduct: it alleges the SAMs were imposed upon Calabrese to prevent further criminal activity and to prohibit communications which could result in death or serious injury. (Indictment, Count One, ¶ 1(i)-(j).) The indictment further alleges that as an employee of the Bureau of Prisons, Klein was apprised of these SAMs, aware that passing information for Calabrese was prohibited, and conspired with Calabrese and others to violate these SAMs. (Indictment, Count One, ¶ 1.) Based on all of the information provided in the indictment supporting Klein's alleged violation of Section 371, the indictment is not unconstitutionally vague as it applies Section 371 to Klein's activities.

Klein further asserts Section 371 is void for vagueness as it applies to his indictment because Klein lacked sufficient notice that his actions amounted to criminal activity. Klein's argument is not persuasive, as he was a Bureau of Prisons employee informed that under Calabrese's SAMs, no communications from Calabrese were to be provided to third parties. Despite this knowledge, the indictment alleges, Klein provided

9

communications from Calabrese to third parties in what the Government views as an attempt to shield Calabrese's assets from seizure. Klein again advances his position that the Calabrese SAMs could only legally seek to prevent death or serious bodily injury, no more, and Klein argues that "nothing that [he] is alleged to have done presented any risk of violence to anyone." (Def. Mot. at 9.) Klein's argument – that his communicating information from a convicted murderer and Mob boss to other parties against express government orders created no risk of violence – is unpersuasive. As discussed above, it is immaterial what information Klein thought he was passing in violation of the SAMs; the mere act of passing communications for Calabrese in violation of the SAMs is enough to be in violation of Section 371. Moreover, Klein does not show how Section 371 is vague as it is applied to Count One of his indictment. Therefore, his void-for-vagueness argument also fails.

## CONCLUSION

Based on the foregoing analysis, Defendant Klein's Motion to Dismiss Count One of his indictment for failure to charge an offense or, alternatively, for vagueness is denied.

Date:  January 14, 2013

JOHN W. DARRAH
United States District Court Judge

10